Filed 12/4/17

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re the Marriage of CYNTHIA VARGAS and CHRISTOPHER ROSS. | C082867 |
| CYNTHIA VARGAS,<br><br>        Appellant,<br><br>    v.<br><br>CHRISTOPHER ROSS,<br><br>        Respondent. | (Super. Ct. No. 12FL04706) |

APPEAL from a judgment of the Superior Court of Sacramento County, John P. Winn, Judge.  Reversed with directions.

Hassan Gorquinpour for Appellant.

Bowman & Associates and Roger G. Kosla for Respondent.

Cynthia Vargas, mother, appeals from a court order awarding Christopher Ross, father, primary physical custody of their minor children.  She contends the trial court

1

applied the wrong legal standard in reaching its decision.  We agree.  Accordingly, we vacate the court's order and remand the matter for further proceedings.

## I.  BACKGROUND

Mother and father are both active service members in the United States Air Force. They were married in 2009, had two children, and divorced in 2013.  At the time of their divorce, both parents were stationed in South Carolina and the initial custody order was for joint legal and physical custody.  After the divorce, father relocated to Washington D.C., returning to South Carolina about once a month to visit the children.  Later, mother relocated to serve in Korea for one year.

On September 13, 2013, in anticipation of her relocation to Korea, mother filed a motion seeking sole legal and physical custody of the children.  She believed father's assignment inhibited his ability to parent the children, so she proposed the children should live in Nevada with her mother for the duration of her assignment in Korea.  She later agreed, however, that the children would stay with father and the court issued an order granting father sole physical custody and granting mother electronic access to the children and visitation when she was "state side."[1]  The parties would continue to share joint legal custody.

In November 2014, nearing the end of her assignment in Korea, mother learned she would be transferred to Wyoming.  She filed a motion seeking sole physical custody of the children upon her return to the states.  At that time, father was stationed in Florida, where he lived with the children.

Prior to the hearing on mother's motion, the parties participated in family court services mediation.  At the conclusion of that mediation, the parties agreed the children

---

[1]  Mother believed their agreement was that the children would return to her primary physical custody when she completed her year in Korea.  That was not, however, part of the court's order.

would remain in father's physical custody with specified dates and locations for mother's parenting time, which included the children spending summer break in Wyoming with mother. On January 12, 2015, the trial court adopted the parties' agreement as the order of the court.

In July 2015, while the children were in Wyoming, mother filed a motion seeking custody of the children for the 2015-2016 school year. The parties returned to family court services but failed to reach an agreement. The mediator recommended leaving the children in Wyoming with mother for the 2015-2016 school year and giving father parenting time as outlined in the recommendation. The trial court did not adopt the mediator's recommendation but sent it back for "a full move-away analysis." The court also found the presumption under Family Code section 3047 did not apply to mother's assignment in Korea.[2]

On August 4, 2015, after performing a "full move-away analysis," the mediator stated that her prior recommendation to leave the children in mother's custody (in Wyoming) for the coming school year was based "on the assumption that the mother had been deployed to Korea for a year (thereby triggering [section] 3047) and also upon the information about the relationship between the parents and their attitudes and demeanor during the [family court services] session." Under the operative custody order, however, the children would be returned to father in Florida the following week. The hearing on mother's motion was scheduled for September 9, 2015. Thus, the mediator found, and mother agreed, it was not in the children's best interest to return to Florida for a few weeks, until the hearing, then move back to Wyoming after the hearing. Accordingly, the mediator recommended the children remain in father's custody in Florida for the 2015-

---

[2] Undesignated statutory references are to the Family Code.

3

2016 school year, with visitation for mother as often as she could travel to Florida, and for all major holiday and vacation periods.

While she recommended the children remain in father's custody for the 2015-2016 school year, the mediator had "serious doubts" about father's willingness to cooperate with mother. She found that "mother appeared much more willing to bend in order to make the visits work and to cooperate with the father in order to see the children."

Days after the mediator issued her recommendation, mother applied for a temporary emergency order to have the children remain in her custody "pending the next court date" on September 9, 2015. The trial court denied her application.

On September 9, 2015, mother objected to the mediator's recommendation and the trial court set the matter for trial on November 13, 2015. The court also ordered joint legal custody of the parties' children, granting primary physical custody to father. Mother would have parenting time in Florida and Wyoming, as outlined in the court's order.

The November 13, 2015, trial on mother's motion, however, did not take place because on October 7, 2015, father requested a change in the physical custody of the children as a result of his deployment. On October 13, 2015, the court granted father's request and gave mother temporary physical custody of the children pursuant to section 3047.

Father returned from his deployment and on July 14, 2016, the issue of the children's custody went to trial. Mother and father both testified at trial and numerous family court services reports, along with the mediators' recommendations, were admitted into evidence. At the conclusion of trial, the court said if it were ruling on "straight best interest analysis, what's in the best interest of these two young men, my ruling would be that mother should be the primary custodial parent. If you are going to rule on a move-away standard, I thought I would rule the same way, that mother should have primary custody because I do feel that the big issue on these type[s] of cases[,] where there is such

4

a geographical distance[,] is which parent is more likely to cooperate and facilitate the non-custodial parent, and I do feel that mother—and it's included in the mediation reports—has tended to be the one more willing to cooperate with the other parent, but under the standard that we're dealing with, I don't think I can rule any other way than to indicate that we should—we have to go back to the orders where father has primary custody in the state of Florida.  There—I think that—I mean, the case law interprets [section] 3047 clearly indicates that a trial court has to be very careful on these types of cases, and the legislative intent, again, suggests that the [c]ourt should, unless it's a clear case, should basically indicate that the parent who was deployed should resume custody."

The court's subsequent "[j]udgment, [o]rder and [s]tatement of [d]ecision [a]fter [b]ench [t]rial" reflected the same findings and conclusions:  "The Family Code [section] 3047[ subdivision ](b)(2) presumption applies in this case.  Upon Father's return from his October 13, 2015[,] deployment, the custody schedule presumptively should revert back to September 9, 2015[,] unless 'the party opposing reversion of the order makes a prima facie showing that reversion is not in the best interest of the child.'

"5.  Mother did not overcome the Fam[ily] C[ode, section] 3047[, subdivision] (b)(2) presumption.

"6.  The court did not need to reach a decision on whether or not the 'limited inquiry' discussed in *Marriage of E.U. [v]. J.E.* (2012) 212 Cal.App.4th 1377, 1391-1392 limited rebuttal factors for purposes of the Fam[ily] C[ode, section] 3047[, subdivision ] (b)(2) presumption."

"[¶] . . . [¶]

"9.  If the matter was sent to the [c]ourt on a regular best interest of *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072 analysis, then the ruling likely would be in favor of Mother.  Mother, based on the current evidence, would be the parent who would be more likely to facilitate visits. . . .

"10.  However, under the current standard, the September 9, 2015[,] [c]ourt [o]rder is reverted back to as a result of the Fam[ily] C[ode, section] 3047 military presumption.  The case law clearly indicates that the trial [c]ourt has to be very careful with military deployment.  The legislative intent is clear.

"[¶] . . . [¶]

"12.  As a result of the above, the military deployment presumption was not overcome by Mother and custody should revert back to the September 9, 2015[,] order that grants Father custody."  (Italics added.)

Mother appeals from this order.

## II.  DISCUSSION

Mother contends the trial court "applied an incorrect legal test" to the question of which parent should have primary physical custody of the parties' minor children once father had returned from deployment.  We agree.  To resolve the issue we must interpret section 3047 and effectuate the Legislature's intent.

*A.     Legal Standards*

" 'The general principles that guide interpretation of a statutory scheme are well established.  When assigned the task of statutory interpretation, we are generally guided by the express words of the statute.  " 'Our function is to ascertain the intent of the Legislature so as to effectuate the purpose of the law.  [Citation.]  To ascertain such intent, courts turn first to the words of the statute itself [citation], and seek to give the words employed by the Legislature their usual and ordinary meaning.  [Citation.]  When interpreting statutory language, we may neither insert language which has been omitted nor ignore language which has been inserted.  (Code Civ. Proc., § 1858.)  The language must be construed in the context of the statutory framework as a whole, keeping in mind the policies and purposes of the statute [citation], and where possible the language should be read so as to conform to the spirit of the enactment.' " ' "  (*County of Los Angeles v. Williamsburg National Ins. Co.* (2015) 235 Cal.App.4th 944, 952-953, quoting *People v.*

6

*Taylor Billingslea Bail Bonds* (1999) 74 Cal.App.4th 1193, 1198.) We review questions of statutory interpretation under the de novo standard of review. (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.)

B.      *Section 3047*

Section 3047 provides in relevant part: "(b)(1) If a party with sole or joint physical custody or visitation receives temporary duty, deployment, or mobilization orders from the military that require the party to move a substantial distance from his or her residence or otherwise has a material effect on the ability of the party to exercise custody or visitation rights, any necessary modification of the existing custody order shall be deemed a temporary custody order made without prejudice, which shall be subject to review and reconsideration upon the return of the party from military deployment, mobilization, or temporary duty.

"(2)  If the temporary order is reviewed upon return of the party from military deployment, mobilization, or temporary duty, there shall be a presumption that the custody order shall revert to the order that was in place before the modification, unless the court determines that it is not in the best interest of the child. The court shall not, as part of its review of the temporary order upon the return of the deploying party, order a child custody evaluation under Section 3111 of this code or Section 730 of the Evidence Code, unless the party opposing reversion of the order makes a prima facie showing that reversion is not in the best interest of the child.

"[¶] . . . [¶]

"(h)  It is the intent of the Legislature that this section provide a fair, efficient, and expeditious process to resolve child custody and visitation issues when a party receives temporary duty, deployment, or mobilization orders from the military, as well as at the time that the party returns from service and files a motion to revert back to the custody order in place before the deployment. The Legislature intends that family courts shall, to the extent feasible within existing resources and court practices, prioritize the calendaring

7

of these cases, avoid unnecessary delay or continuances, and ensure that parties who serve in the military are not penalized for their service by a delay in appropriate access to their children."

*C.    Section 3047 Does Not Create a New Standard for Evaluating the Best Interest of the Child*

Here, the trial court found that under a "regular" or "straight" best interest analysis, it would be in the children's best interest to be in mother's primary physical custody because mother was the parent more likely to facilitate contact. The court did not, however, believe this was sufficient to overcome the section 3047 presumption. Thus, the court ordered custody of the parties' minor children to revert back to the September 9 order, placing them in father's primary physical custody. The court misinterpreted its obligations under section 3037.

Section 3047 says custody "shall revert to the order that was in place before the modification, *unless the court determines that it is not in the best interest of the child.*" (§ 3047, subd. (b)(2), italics added.) The language is not ambiguous and its meaning is well known to the Legislature because "[u]nder California's statutory scheme governing child custody and visitation determinations, the overarching concern is the best interest of the child." (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255; see, e.g., §§ 3011, 3020, 3040.) In evaluating the best interest of the child, courts consider many factors, including the continuity and stability of relationships, the history of conflict between parents, the parents predicted ability to facilitate continued contact, and the ability of the parents to put the child's needs ahead of their own. (*In re Marriage of LaMusga, supra*, 32 Cal.4th at p. 1101.)

In enacting section 3047, the Legislature did not, as the trial court suggested, include language requiring the trial courts to be more careful than they otherwise would

8

in determining a child's best interest.[3]  Nor did the Legislature identify specific factors that trial courts are required to consider or ignore in determining the best interest of the child.  We may not insert language into the statute to add such requirements and change the standard for determining the best interest of the child.  (Code Civ. Proc., § 1858.)  Accordingly, when the trial court found it would be in the children's best interest to remain in mother's custody because she was the parent most likely to facilitate contact, the section 3047 presumption was overcome.  (See § 3040, subd. (a)(1) [the parent more likely to allow frequent and continuing contact with the noncustodial parent is the preferred parent].)

The unambiguous language of section 3047 evidences the Legislature's intent to preserve the best interest of the child as the "overarching concern" for determining child custody orders while granting certain protections to deployed men and women serving in the armed forces.  (*Montenegro v. Diaz*, *supra*, 26 Cal.4th at p. 255.)  By enacting section 3047, the Legislature guaranteed that when active military duty parents are deployed, any change in custody required as a result of their deployment will be a temporary one. (§ 3047, subd. (b)(1).)  Thus, when the deployed parent returns, he or she will not be required to show a significant change in circumstance in order to return to the status quo prior to deployment.  (See *Montenegro v. Diaz*, *supra,* at p. 256 [modifying a final custody requires a parent to show a significant change of circumstances, an adjunct to the best interest of the child standard].)  In addition, the statutory presumption shifts the burden of proof to the parent opposing a return to the status quo and not the parent returning from deployment.

---

[3]  To the extent *Marriage of E.U. v. J.E., supra*, 212 Cal.App.4th 1377 suggests there is a different, heightened standard for evaluating the best interests of a child under section 3047, or that certain factors are to be considered and others disregarded, we disagree with that decision.

The Legislature also made the process of resolving these unique custody disputes more "expeditious" and "efficient" for returning military parents by creating the section 3047 presumption. (§ 3047, subd. (h).) The Legislature further reduced delays by requiring the party opposing a return to the status quo to make a prima facie showing that the prior custody order is no longer in the best interest of the child before the trial court can order either a section 3111 or Evidence Code section 730 evaluation. (§ 3047, subd. (b)(2).) The Legislature also directed trial courts to "prioritize the calendaring of these cases" "to the extent feasible within existing resources and court practices." (§ 3047, subd. (h).)

In sum, section 3047 does provide deployed service men and women with certain protections, including expediency in the resolution of their custody disputes, but it does not alter the best interest of the child standard used to make all decisions regarding child custody. The trial court erred in ruling otherwise.

### III.  DISPOSITION

The trial court's August 4, 2016, order is vacated.  The matter is remanded.  The trial court is directed to evaluate the evidence and issue a custody order based on the best interest of the children, as discussed in this opinion.  Consistent with the Legislature's intent and the express terms of section 3047, the trial court is further directed to resolve the issue as expeditiously as feasible.  Costs on appeal are awarded to mother.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

/S/

RENNER, J.


We concur:

/S/

BLEASE, Acting P. J.


/S/

DUARTE, J.

11